

U.S. Department of Justice

*United States Attorney*
*District of Connecticut*

| | |
|---|---|
| *Connecticut Financial Center* | *Telephone: (203)821-3700* |
| *157 Church Street, Floor 25* | *Fax: (203) 773-5376* |
| *New Haven, Connecticut 06510* | |

November 22, 2013

Paul F. Thomas, Esq.
Federal Public Defender
265 Church Street, Suite 702
New Haven, CT 06510-7005

    Re:    **United States v. Jennifer Chirico**
             Criminal No. 3:13cr216 (JCH)

Dear Mr. Thomas:

    This letter confirms the plea agreement between your client, Jennifer Chirico (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the above-referenced criminal matter.

## THE PLEA AND OFFENSE

    Jennifer Chirico agrees to waive her right to be indicted and to plead guilty to a one-count information charging her with maliciously conveying false information, in violation of 18 U.S.C. § 844(e). She understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

    1.    Defendant maliciously conveyed false information
    2.    Defendant did so using the telephone
    3.    The communication was in and affecting interstate commerce
    4.    Defendant knew the information was false
    5.    The false information concerned an attempt or alleged attempt, by means of fire or explosive, to kill, injure, or intimidate any individual; or unlawfully to damage or destroy any building, vehicle, or other real or personal property

## THE PENALTIES

    This offense carries a maximum penalty of ten years imprisonment and a $250,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than three years to begin at the expiration of any term of imprisonment. The defendant understands that, should she violate any condition of the supervised release, she may be required to serve a further term of imprisonment of up to two years with no credit for time already spent on supervised release.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; or (3) $250,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on the count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

The defendant is also subject to restitution, as discussed below. Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500 as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (i) and § 3612(g).

### Restitution

In addition to the other penalties provided by law, the Court must may also order that the defendant make restitution under 18 U.S.C. § 3663, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663.

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that she has no right to withdraw her guilty plea if her sentence or the Guideline application is other than she anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

### Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under 3E1.1(a) and her offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on her prompt notification

of her intention to enter a plea of guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw her plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that she may not withdraw her plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

### Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

### Guideline Stipulation

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2A6.1(a)(1) is 12. The parties stipulate and agree that relevant conduct under U.S.S.G. § 1B1.3 includes the seven false bomb threat calls listed in the chart in the Stipulation of Offense Conduct at the end of this letter, all made on the morning of March 8, 2013, and including the charged bomb threat call to the Connecticut State Police offices in Middletown, received at approximately 7:37 a.m. The base offense level is increased by 2 points under U.S.S.G. § 2A6.1(b)(2) because the relevant conduct involved more than two threats, and by four points under § 2A6.1(b)(4) because the threats caused a substantial disruption of government services. Three levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 15.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category III. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 15, assuming a Criminal History Category III, would result in a range of 18 to 24 months of imprisonment (sentencing table) and a fine range of $4,000 to $40,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of one year to three years. U.S.S.G. § 5D1.2.

The defendant reserves her right to seek a departure or non-Guidelines sentence, and the Government reserves its right to object and seek whatever sentence it deems appropriate.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further understands that she will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations. Moreover, the Government expressly reserves the right to defend any sentencing determination, even if it differs from that stipulated by the parties, in any post-sentencing proceeding.

Appeal Rights Regarding Sentencing

The defendant acknowledges that under certain circumstances she is entitled to challenge her conviction and sentence. The defendant agrees not to appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241, the conviction or sentence imposed by the Court if that sentence does not exceed 18 months, a three-year term of supervised release, and a $40,000 fine, even if the Court imposes such a sentence based on an analysis different from that specified above. Similarly, the Government will not

appeal a sentence imposed within or above the stipulated sentencing range. The Government and the defendant agree not to appeal or collaterally attack the Court's imposition of a sentence of imprisonment concurrently or consecutively, in whole or in part, with any other sentence. The defendant acknowledges that she is knowingly and intelligently waiving these rights. Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

### Information to the Court

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case. Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

## **WAIVER OF RIGHTS**

### Waiver of Right to Indictment

The defendant understands that she has the right to have the facts of this case presented to a federal grand jury, consisting of between sixteen and twenty-three citizens, twelve of whom would have to find probable cause to believe that she committed the offense set forth in the information before an indictment could be returned. The defendant acknowledges that she is knowingly and intelligently waiving her right to be indicted.

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that she has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent her.

The defendant understands that she has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against her, the right not to be compelled to incriminate herself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in her defense. The defendant understands that by pleading guilty she waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if she pleads guilty, the Court may ask her questions about each offense to which she pleads guilty, and if she answers those questions falsely under oath, on the record, and in the presence of counsel, her answers may later be used against her in a prosecution for perjury or making false statements.

Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution. The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that she is entering into this agreement and is pleading guilty freely and voluntarily because she is guilty. The defendant further acknowledges that she is entering into this agreement without reliance upon any discussions between the Government and her (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges her understanding of the nature of the offense to which she is pleading guilty, including the penalties provided by law. The defendant also acknowledges her complete satisfaction with the representation and advice received from her undersigned attorney. The defendant and her undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority. The defendant acknowledges that no representations have been made to her with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved. Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving her.

## COLLATERAL CONSEQUENCES

The defendant further understands that she will be adjudicated guilty of each offense to which she has pleaded guilty and will be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms. The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the

defendant understands that the Government reserves the right to notify any state or federal agency by which she is licensed, or with which she does business, as well as any current or future employer of the fact of her conviction.

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of her participation in the series of seven bomb threats conveyed on March 8, 2013, described in the attached Stipulation of Offense Conduct.

The defendant understands that if, before sentencing, she violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw her plea of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

*[signature]*

HENRY K. KOPEL
Assistant United States Attorney

The defendant certifies that she has read this plea agreement letter and its attachment(s) or has had it read or translated to her, that she has had ample time to discuss this agreement and its attachment(s) with counsel and that she fully understands and accepts its terms.

_____       11/22/13
JENNIFER CHIRICO                                              Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that she understands and accepts its terms.

_____       11/22/13
PAUL F. THOMAS, ESQ.                                Date
Attorney for the Defendant

## STIPULATION OF OFFENSE CONDUCT

The defendant Jennifer Chirico and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the information:

On the morning of Friday, March 8, 2013, a series of seven bomb threat calls were received over the telephone by, respectively, television station WTNH Channel 8 in New Haven; the Waterbury police desk at the Waterbury Superior Court; the Connecticut State Police offices in Middletown; the Waterbury Superior Court clerk's office; and the U.S. District Court clerk's office in New Haven. All seven calls mentioned or described the Waterbury Superior Court as either the one location, or as one of multiple locations, where bombs were about to explode. The following chart lists the approximate times and the recipients of the calls, the gender of the callers as reported by the persons who received and listened to the calls, and the substance of the threats conveyed in each call.

| Call | Call Time | Received by | Caller Gender | Substance of Threat |
|---|---|---|---|---|
| 1 | 7:22 am | WTNH Ch. 8, New Haven | Male or Female | Bomb would go off at Waterbury courthouse |
| 2 | 7:30 am | Waterbury police desk, Waterbury courthouse | Female | 3 bombs would go off at Waterbury courthouse at 11 am |
| 3 | 7:37 am | CT State Police HQ, Middletown | Female | 3 bombs would go off at 11 am at Waterbury, Hartford, & New Haven courthouses |
| 4 | 8:54 am | WTNH Ch. 8, New Haven | Male | Bombs were in Waterbury, Hartford, & New Haven courthouses |
| 5 | 9:04 am | Waterbury court clerk, Waterbury | Female | Bomb will go off at 11 am at 300 Grand Street [Waterbury court address] |
| 6 | 9:37 am | Federal court clerk, New Haven | Male | 3 bombs would go off at 11 am at New Haven courthouse on Elm St. |
| 7 | 9:45 am | Waterbury court clerk, Waterbury | Female | 3 bombs would blow up 300 Grand Street [Waterbury court address] |

Analysis of records of incoming calls to the recipients' telephone accounts identified two sources of the seven, incoming threat calls. Calls 1-4 originated from a local cell phone account ending in the digits x7523, and subscribed in the name of a male individual ("Male Suspect 1") listing an address in New Haven. Further investigation disclosed that Male Suspect 1 was named in two New Haven Police Department ("NHPD") reports associated with another New Haven address on the respective dates of November 19, 2011, and February 24, 2012. Both incidents involved police responding to a domestic violence call at that other address, where they found defendant Jennifer Chirico and Male Suspect 1 together at the location. In both incidents, defendant Chirico accused Male Suspect 1 of having assaulted her.

Call 6 originated from a local cell phone account ending in the digits x7517, subscribed in the name of a female with no subscriber address listed; investigating agents were unable to find any connection between the listed female subscriber name and any of the seven threat calls. However, a West Haven Police Department ("WHPD") report from December 14, 2012, identified that same phone account, x7517, as belonging to defendant Chirico. According to that WHPD report, defendant Chirico's roommate had reported Chirico as having gone missing for some days; the roommate identified Chirico's cell phone as that same telephone account ending in x7517.

Analysis of data concerning Calls 5 and 7, both received by the Waterbury Court clerk's office, concluded that the calls could have originated from either the Male Suspect 1 phone, x7523, or the Chirico phone, x7517. Specifically, the Waterbury Superior court clerk's office received calls from both numbers close to the times of the threat calls, namely, around 9:04 a.m., and 9:45 a.m.

Further investigation disclosed that on the day of the threat calls, defendant Chirico had a court hearing scheduled for that same morning in a misdemeanor criminal case pending before the Waterbury Superior Court.

On Thursday, May 17, 2013, members of the Connecticut State Police ("CSP") visited defendant Chirico at her then-known address, identified themselves, advised her of the ongoing investigation, and asked whether she would be willing to talk with them. Chirico agreed to talk and provided a sworn, written confession. Among other things, Chirico stated that she had spent the night before her March 8 court date in the New Haven apartment of a friend named "Mike," where Male Suspect 1 was also staying, and that Male Suspect 1 had promised to drive her to Waterbury court the next morning, but failed to get out of bed in time. According to Chirico, Male Suspect 1 told her to make a bomb threat so the Court schedule would be delayed and she could still arrive "on time." Chirico said that Male Suspect 1 made the first threat call, but then Chirico made several threat calls on her own phone, to courthouse numbers provided by Male Suspect 1. Chirico stated that Male Suspect 1 also continued to make some calls. In total, Chirico recalled having made four or five of the bomb threat calls.

As a result of the bomb threat calls, three Waterbury courthouses, located respectively at 300 Grand Ave., 400 Grand Ave., and 7 Kendrick Ave., all were evacuated. Also, after more bomb threat calls were received, the 300 Grand Ave. courthouse was evacuated a second time that same morning. Emergency response teams arrived at all three Waterbury courthouses, and the New Haven federal courthouse, and conducted inspections for bombs or explosive materials; none were found.

The written stipulation above is incorporated into the preceding plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

_____
HENRY K. KOPEL
Assistant U.S. Attorney

_____
JENNIFER CHIRICO
Defendant

_____
PAUL F. THOMAS, ESQ.
Attorney for the Defendant