UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA                :

                     vs.              :        CRIMINAL NO.  3:13CR216(JCH)

JENNIFER CHIRICO                        :        March 2, 2015

DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Introduction

      Jennifer Chirico is a young woman who has had an exceptionally difficult life, as detailed in both the Presentence Report ("PSR") and in a report of psychological evaluation ("Report") that has been submitted to the Court.  Her challenges started at birth when she was born prematurely and addicted to opiates. Report at 3. As an infant she failed to thrive and in the first four years of her life she was taken 22 times to the emergency room and admitted to the hospital three times. Report at 3. In childhood she suffered extreme physical and emotional abuse from her mother, who suffered from mental health problems and addiction to heroin. PSR ¶¶ 57-58; Report at 3-5. In her adolescent years she developed psychiatric problems that led to multiple hospitalizations, Report at 5; PSR ¶¶ 62, 76-77, to substance abuse that extended through her twenties. Report at 10; PSR ¶ 74, and to a long series of arrests and convictions and several incarcerations. PSR ¶¶ 35-49. What was needed but lacking throughout was any measure of stability; what was ever-present was chaos and a risky lifestyle. Report at 7. Until her arrest in this case, Ms. Chirico had received no mental health treatment since she was 17. Report at 10.

      Jennifer has finally found a stable setting where she has been able to constructively address her deep-rooted emotional problems. With effective and extensive help from a community based therapeutic program, she moved from a shelter to her own apartment with her young daughter. Report at 11. She is not using alcohol and other substances, she is receiving and responding well to mental health treatment, and she is demonstrating motivation to continue this progress. Report at 11, 18-19. Ms. Chirico comes before the Court for sentencing as a result of her most recent impulsive acts of poor

- 2 -

judgment, but we urge the Court not to follow the path of least resistance, i.e., yet another unproductive and potentially destructive sentence of imprisonment. Rather, recognizing that this young woman is broken but reparable, and has shown that with support she can continue on the path of recovering from her many horrific experiences, we urge the Court to be guided by the conclusion offered by the forensic psychologist whose report is before the Court:

> Despite these daunting challenges, she has demonstrated that she latches on to role models, responds to support, structure and direction, and can follow through when there are strict guidelines. Her chance for successful rehabilitation, reduced recidivism, and successful independence lies with effective treatment, a life mentor, and a structured life skills program, behaviorally based with clear consequences and rewards.

Report at 20. The Court has an opportunity to accomplish here what has not been done in previous judicial proceedings: to address Ms. Chirico's "daunting challenges" with the resources available in this setting and through what likely would be the also daunting project of supervised release.

1. The Nature and Circumstances of the Offense

On March 18, 2013 Jennifer Chirico was scheduled to appear at Superior Court in Waterbury for a pending case involving charges of larceny, criminal mischief, trespass and failure to appear. ("PSR") ¶ 13. She spent the night before in New Haven with a friend who promised to drive her to court, but he slept late. He suggested to Ms. Chirico that they call in a bomb threat so court would be delayed and she could still arrive on time. PSR ¶ 14. She went along with that hair-brained and criminal plan and with her friend made numerous phone calls to courts, to the state police and to a television news station falsely claiming that there were bombs about to explode at several locations, including the Waterbury courthouse. PSR ¶¶ 6-8. Investigation revealed that the telephone used to place the calls may have belonged to Ms. Chirico and when investigators visited her on May 17, 2013 she gave a written confession. PSR ¶ 13. On November 22, 2013 she appeared before this Court, waived indictment and pled guilty to an information that charged her with maliciously conveying false information in violation of 18 U.S.C. § 844(e). PSR ¶ 1.

This offense, the latest in a long series of offenses, bore the characteristic impulsivity noted to be an aspect of her underlying bipolar disorder. Report at 15.

- 3 -

2. <u>Ms. Chirico's History and Background</u>

The Presentence Report and psychological evaluation extensively discuss Ms. Chirico's background and counsel relies on that record without restating the details here. Several observations in the report, however, bear emphasis:

> "Ms. Chirico is a young woman with a traumatic and complicated history. She has been shaped by both a psychiatric illness and chaotic and abusive environments since childhood."

> "Her early home life was marked by substance abuse, marital conflict, and violent episodes. She lacked the teaching and role models necessary for a child without deficits to develop mastery over impulses and emotions."

> "Notably absent from her early development were the treatment and interventions that may have altered her destructive course."

> "As evident from the past year, Ms. Chirico can benefit from treatment and a structured supportive environment. Her relationship with her baby is a strong motivator and gives her the incentive to stay in treatment and comply with rules."

> "Another major factor that shaped Ms. Chirico's past and contributed to her arrests was her substance abuse and addiction. She began using drugs as an adolescent. As she described, she used the drugs to help her 'feel better.' since she has been abstinent under supervision on probation and in treatment, her craving for substances has faded. Being substance free is a major step toward stability."

Report at 17-18.

3. <u>Sentencing Options</u>

One possible sentence in this case would be to punish Jennifer Chirico with a term of imprisonment. Based on her criminal history and the nature and seriousness of this offense, the advisory Guidelines sentencing range is 24-30 months. PSR ¶¶ 21-31, 35-50, 86. That range, of course, is a benchmark for a heartland case and a heartland offender and this offense and this offender are far outside that heartland. Also authorized by statute as a sentence is a term of up to five years probation. PSR ¶ 89. Considering the needs of a sentence identified in 18 U.S.C. § 3553(a)(2) in light of all the relevant background factors including the motion filed by the government, the balance here should be struck in favor of probation, the only sentence that offers a realistic opportunity to break the cycle of criminal and chaotic and self-destructive conduct that has characterized so much of Jennifer Chirico's

- 4 -

life.

Among the needs of sentencing that must be considered is for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. §3553(a)(2)(A). There is no denying that the offense here was serious: it was undoubtedly frightening to persons told of the presence of bombs set to explode and it was disruptive of normal activities and required prompt emergency response to dispel the reality of the threats. The needs listed above, however, do not stand alone, and are  offset where a defendant has accepted responsibility and acted in a manner set forth in the government's motion. Indeed, in some such cases sentencing courts, without other mitigating reasons, significantly reduce what otherwise would be very lengthy sentences. This result does not disserve the aforementioned needs; rather, it reflects the fact that other objectives carry greater weight in the particular case. This is such a case.

A second explicit purpose that requires consideration is the need "to afford adequate deterrence to criminal conduct[.]" 18 U.S.C. § 3553(a)(2)(B). Here again, this objective is not and cannot always be paramount. Moreover, in the context of an offense that by nature is especially impulsive, the  would not –even if intended to be a deterrent –likely reach the audience of potential offenders. More importantly, to impose a punitive sentence here for the broader societal interest of deterring other potential offenders would come at greater societal cost resulting  from the destructive effect the sentence would have on this  needy young woman who has the unique opportunity to maintain a path that directly benefits society by helping her heal.

The third listed statutory need is for the sentence "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C). In other cases with repeat offenders, it is common for sentencing courts to find that not only that imprisonment is needed to serve this purpose, but that a term longer than previously imposed is appropriate. Imprisonment here, however, would only protect the public during the term of imprisonment; it would not effectively address the major and debilitating psychological problems that have led to the criminal conduct. Instead, it would be an opportunity lost at great cost and with little benefit to reducing recidivism, if any.

- 5 -

The final identified purpose is, in this case, the most salient: the need "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(4). For the first time in her life, Jennifer Chirico is making progress in addressing the debilitating problems that have afflicted her since birth. When she was referred to the FISH Center in Torrington she truly found shelter. In that environment, with help from the dedicated staff that deserves great credit for Ms. Chirico's progress toward stability, she has learned to take care of her baby daughter and she is learning to take care of her own profound needs. She is doing better than she has for her whole life. She now resides in her own apartment, she actively participates in ongoing out-patient mental health treatment, she takes prescribed medications that have helped her manage her moods, and she is drug free. There is no substitute for success, but success is fragile for a person with Ms. Chirico's background. The place for needed care and treatment and education is the place where it has been effective, not in the custody of the Bureau of Prisons.

This case presents extraordinary reasons for an extraordinary sentence. Ms. Chirico experienced extreme childhood abuse and neglect, themselves a recognized basis for a below-guidelines sentence. She suffers from major emotional problems, another recognized basis for a below-guidelines sentence. More significantly, measured from the point of departure, Ms. Chirico has made extraordinary progress in addressing and managing these debilitating problems. And the government has asked the Court to sentence below the guideline range. These mitigating factors, individually and in combination, support a finding that a sentence of probation – with conditions tailored to provide Ms. Chirico with essential services that can be provided through supervision – will be sufficient but not greater than needed to serve the competing goals of sentencing.

<u>Conclusion</u>

Since her arrest Ms. Chirico has made great progress – with the assistance of community-based mental health resources and other community support programs – in stabilizing her life. Ms. Chirico's life has deeply affected by "a very difficult upbringing" that included "repeated physical and emotional abuse," by intermittent treatment for her psychiatric conditions," by "a significant drug problem," and

- 6 -

by "un-managed psychological diagnosis[.]" PSR ¶¶ 102-104. Ms. Chirico's life was a chaotic mess, her decision-making was impaired and she acted impulsively in committing this offense. Since her arrest she has shown the ability to address her problems and deficits and to live within the law. What she needs at this critical stage in her life is continued support which can best be provided through supervision. What she – and society – do not need is for her to be uprooted from the community by a destructive custodial sentence.

Respectfully submitted,

THE DEFENDANT,
Jennifer Chirico

FEDERAL DEFENDER OFFICE

Dated:  March 2, 2015          /s/ Paul F. Thomas

Paul F. Thomas
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT 06510
Phone: (203) 498-4200
Bar no.: ct01724
Email: paul_thomas@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 2, 2015, 2015, a copy of the foregoing Defendant's Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Paul F. Thomas
Paul F. Thomas